## Case No. 5,548.

### GOODSELL et al. v. BRIGGS et al.

[Holmes, 299.] [1]

Circuit Court, D. Massachusetts. March, 1873.

#### CUSTOMS DUTIES—APPRAISEMENT—INJUNCTION AGAINST APPRAISERS.

1. In appraising the value of an importation, the appraisers are not bound by prior appraisals of the value of goods of the same kind imported by the same party.

2. The circuit court has no authority to enjoin the appraisers from taking evidence, anywhere as to the value of an importation.

3. The court refused to enjoin the appraisers of the value of an importation of gloves, from carrying out of the district into which the importation was made, samples of the gloves, for the purpose of obtaining evidence as to the value of the importation.

Motion for injunction [by T. B. Goodsell and others against H. S. Briggs and others]. The original bill was against the appraisers of certain importations of the complainants. It alleged that the complainants, as a firm, were manufacturers at Naples, Italy, of a peculiar kind of glove, and imported the same to Boston, Mass.; that several controversies had arisen between the complainants and the customs officers of the United States as to the true market value of the gloves at Naples; that in 1872, according to an arrangement with the secretary of the treasury, one of the complainants went to Naples and obtained evidence of the market value of the gloves there; that upon his return a hearing was had before the general appraiser as to said value, which hearing was understood by the United States authorities and the complainants to be final, and end all controversy as to the value of the gloves; that the decision upon the hearing was that the gloves imported were invoiced at the proper value, and accordingly the duties on all such importations up to Jan. 1, 1872, were paid, and the bonds therefor cancelled; that in March, 1873, and at sundry times afterwards, the local appraiser had marked up the value of importations of gloves by the complainants, notwithstanding the former final decision of the value of such importations, and although the gloves were of the same quality as those previously imported by the complainants, and the value thereof in Naples had not changed; that the appraisers had appointed a hearing to be held in New York, at which evidence was to be taken by the appraisers as to the value of the importations since Jan. 1, 1872; that the complainants had protested against any hearing in New York. The bill prayed that the appraisers be enjoined from removing the goods to New York; and from holding any hearing there as to the value of the complainants' said importations, except by interrogatories and cross-interrogatories under a commission; and that the general and merchant appraisers be enjoined from holding further hearings as to such value; and that the local appraiser be enjoined from marking up the value of said importations. By supplemental bill, the complainants charged that the collector of Boston had authorized the removal of some of the complainants' goods to New York, and that they had been removed by the general appraiser; and prayed that the collector be made a party defendant, and that the general appraiser be ordered forthwith to return the goods to the storehouse in Boston; otherwise the prayer of the supplemental bill was as in the original bill. The collector, by his answer, denied that he had ordered, or intended to order, removal of the complainants' goods. The local appraiser made affidavit averring that all acts done or proposed to be done in the premises were authorized by instructions of the secretary of the treasury; and denying that any of the complainants' goods had been removed to New York, except samples, removed before the original bill was filed; which samples were necessary for use in taking evidence in New York as to the value of the importations.

B. F. Butler and John A. Loring, for complainants.

F. W. Hurd, for defendants.

LOWELL, District Judge. It is a very useful function of courts of equity to restrain vexatious litigation by enjoining a renewal of a contest which has been fully settled between the same parties. The bill makes out a case which might well call for such interference, if the complainants' rights have been definitely and forever adjudicated, as they allege, and if the appraisement of different goods heretofore imported by them were analogous to a suit between them and the United States. But it must be admitted that each importation is a new case, on which the appraisers are to pass judgment, and on which they may take new evidence; and no court has ever undertaken to say that one, two, or any number of former appraisements made the matter rem judicatam, and estopped further inquiry. If this analogy could be made out, there could never be more than one appraisement of the same class of goods of the same importer, however mistaken the first might have been. This rule would work as harshly for the merchant as for the government, for it is the right of both to have every invoice appraised on its own merits. Besides, it would be necessary to show that the goods were in fact precisely alike, and that the market value in the country of exportation had not changed; which are among the very facts which the appraisers are appointed the sole tribunal to decide, with no appeal to this or any other court. If oppression is exercised by vexatious and unfounded examination and re-examination of questions really the same, though nominally different, I know of no judicial remedy, though there may be others. It is clear that in appraising these goods the

---

[1] [Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]

officers are acting within the scope of their authority, and that I have no power to enjoin them from using their judgment in the premises.

It seems to be within the scope of the appraisers' powers to obtain evidence wherever it is to be found. The statute says they are to ascertain, estimate, and appraise the value by all reasonable ways and means in their power, and it gives them power to summon witnesses and take depositions. The bill says they cannot take evidence out of this judicial district; which may be true in one sense, that is, they may not be able to oblige witnesses to attend out of the district. But they have the right to inform themselves; and if witnesses will attend and testify in New York, they may take their testimony, ex parte, if they choose; and the notice to the complainants is a matter of courtesy and fairness, upon which they may take such action as they think best. It is a commendable practice, and one which, I understand, is always followed, as it should be, to give the importer an opportunity to see and examine the witnesses; but I know of no law which requires it, or which obliges or would justify the appraisers to overlook any evidence which they can reasonably obtain, though it may put the government and the importer to some trouble and expense, if the evidence is important enough to warrant it. It is all a question of judgment and discretion. If the complainants have procured evidence in Naples, I know of no reason why the appraisers may not seek it in New York. Nor do I know of any law which requires it to be taken on written interrogatories filed in this district, or indeed that it can be so taken.

On the only remaining subject-matter of the prayer I remain of the opinion expressed to both parties at or just after the argument. If the case were made out that the defendants were about to remove a large and valuable part of the complainants' goods to New York, they would be acting beyond their jurisdiction, and I do not know that I should not feel bound to restrain them. If they can remove one package in every ten, they can remove the other nine, and the complainants would have no adequate remedy. On the question whether the action against the officer would be adequate, I expressed some doubt; but it would not be so, I am satisfied, in many cases. But there are some circumstances which make it improper, in my judgment, to issue the writ at this time. I see no legal objection to the appraisers taking so much of the goods as would serve for samples, unless in some very unusual and extraordinary case, where the mere specimens would be of great value. If they cannot do this, they cannot take the testimony to any purpose. Now the local appraiser makes oath that only samples have been taken; and though this is denied by the complainants on oath, yet their statement is made, as it almost necessarily must be, on information and belief only, while the appraiser ought to know whereof he affirms.

I have not had time to make a thorough examination of the law of the case, though I have read many important cases. I assume that the circuit courts will never interfere with the ordinary action of the administration of the customs laws by the proper officers, and have no jurisdiction to do so. I assume, further, that if the officers do an act which is beyond their jurisdiction, and is a mere usurpation, the court may interfere by injunction, if the case seems to require it.

By one of the statutes concerning internal revenue the courts are prohibited from restraining the assessment or collection of any tax,—meaning, I suppose, a tax under those laws; and I do not understand that the circuit courts have ever exercised a power of restraining collectors of customs from assessing or collecting duties. The remedy by action is not only plain and adequate, but exclusive, in most cases. I have seen no case in which such a writ has been issued, except by consent, though there may be such. But to take away the property of the tax-payer, not in assessing or collecting a tax, but for some incidental purpose, or to destroy it, or to give it away, is not either assessing or collecting a tax. And I am at present inclined to think that there is jurisdiction in such a case, whether the officer be acting in the internal or the customs service. Motion denied.